UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No. 4:04-CR-40015
Defendant No. 01

UNITED STATES )
)
V. )
)
JONATHAN VEGA )

### Sentencing Memorandum

Now comes the defendant, Jonathan Vega, and files this memorandum in support of his request for sentencing in the above captioned matter. The defendant is a twenty-one year old male from Worcester, who spent the majority of his life being shuffled between numerous foster homes. The defendant was employed from the late 1990s to 2002 as a floor manager at McDonald's. During this period, Mr. Vega filed his income tax returns on a regular basis and in general functioned as a regular law abiding citizen. However, the defendant has been unemployed since 2002, and receiving disability benefits, due to his various medical problems.

On or about April 28, 2004, Mr. Vega at the request of his co-defendant, Todd Hickey accompanied Hickey to 44 Gould Road in Charlton, Ma, the address of Mr. Hickey's uncle. It was Mr. Vega's understanding that Hickey had a snow mobile stored at the residence in Charlton that he was willing to sell to Mr. Vega. While at the residence of Hickey's uncle in Charlton, they came across firearms, and Hickey convinced the Mr. Vega to assist him in removing the firearms from the house. Jonathan Vega was unaware that there were firearms stored in the house until made aware of their presence by Todd Hickey.

The recent case of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) struck down the mandatory application of the United States Sentencing Guidelines, and thus the Court has much broader leeway in fashioning a reasonable sentence than it did previously. The guidelines now should only be used in an advisory capacity. While the guidelines remain advisory, a sentencing court may depart downward from the guidelines if it finds that there exist mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines. <u>Zecevic v. U.S. Parole Com'n</u>, 163 F.3d 731 (2nd Cir. 1998). Departure is warranted if there are any features in the case that take it outside the guidelines' heartland, thereby making it a special, or unusual case. In determining whether a case falls outside of the guidelines' heartland, the sentencing guidelines do not preclude consideration of a defendant's tragic personal history. <u>U.S. v. Lopez</u>, 938 F.2d 1293, 1298 (D.C. Cir. 1991).

In the case at bar, the defendant's personal history takes this case outside the guidelines' "heartland". Mr. Vega's father is an alcoholic and his mother is a drug addict. In 1990 after his father was sentenced to prison and his mother abandoned the children, he and his siblings were placed in seven different foster homes. For seven years, the defendant was shuffled between numerous foster homes, none of which he enjoyed, nor can be said to have positively influenced his life. Mr. Vega rarely had any contact with his other siblings, or his parents. In 2001, defendant's brother was killed and Mr. Vega's mother then moved back to Massachusetts in an attempt to bond with her children. Defendant subsequently left the foster home in which he resided, dropped out of high school and moved to the Worcester area in order to have a chance to live with and bond with his mother. A few months after moving in with his mother, she abandoned him again, and moved back to New York. This abandonment had a serious emotional

and psychological impact on Mr. Vega, and left him not only alone but also completely devastated emotionally to this date.

An extraordinary physical impairment may also warrant departure. The Tenth Circuit has set forth a two-part test to determine whether departure is warranted for physical impairment. The first prong entails that the court must first make a factual finding to decide whether the defendant's physical and mental disabilities constitute an extraordinary physical impairment. The court should then consider whether the condition warrants a shorter term of imprisonment or an alternative to confinement. U.S. v. Slater, 971 F.2d 626 (10th Cir. 1992). The court "may consider any number of circumstances," not just whether the Bureau of Prisons can accommodate defendant's disability. U.S. v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993).

Defendant was born with Scoliosis, an absent left kidney and he also has a history of Klippel-Feil syndrome. Klippel-Feil syndrome is a rare disorder, which consists of short neck, low posterior hairline and severe restriction of motion of the neck due to complete fusion of cervical vertebrae. Due to his extensive physical infirmities, Mr. Vega underwent back surgeries in February and then again in November 1991 and continues to suffer with daily back pain. Sadly, Mr. Vega has not received the appropriate medication for this problem while being held in pretrial detention and is often in excruciating pain. In 2003, Defendant underwent two surgeries on his right knee in order to repair torn ligaments. During Defendant's period of incarceration, he has not received the necessary medical care he needs to combat his physical impairments. Prison services have been inadequate to accommodate his disabilities. Mr. Vega requires constant medical care, and as mentioned earlier, has not even received the necessary medication to alleviate the pain he endures on a daily basis.

The duplicitous nature of the guidelines as applied to Mr. Vega further warrants departure. In <u>Jones v. United States</u>, 526 U.S. 227, 230 (1999), the Supreme Court considered the question of whether provisions in the guidelines that established higher penalties to be imposed when the offense resulted in serious bodily injury or death, set forth additional elements of the offense, and were not mere sentencing considerations. The Supreme Court found that violence was a part of the statutory offense and to allow the Guideline to increase one's sentence based on the degree of violence was improper.

In the present case, Mr. Vega is charged with possession of stolen firearms, pursuant to 18 U.S.C. Section 922(j). He was given an additional two points pursuant to Section 2K2.1(b)(4) of the Sentencing Guidelines. This provision adds two points because the firearms in question were stolen. As explained in <u>Jones</u>, supra, the statute in question here clearly makes the fact that the firearms were stolen an element of the offense. He is charged with the "possession of stolen firearms". Section 2K2.1(b)(4)'s requirement of adding two additional points for the stolen firearms should not be a sentencing consideration because the fact that the firearms were stolen is the essential element of the offense charged. The two additional points for the firearms being stolen is duplicitous and unfairly punishes the defendant twice for the same offense. The defendant has already been charged with possession of stolen firearms, the additional two points is thus repetitive.

For the foregoing reasons, Jonathan Vega asks the Court to make the necessary departures from the guidelines range and not include the additional two points assessed because the firearms were stolen, Mr. Vega has been incarcerated pre trial since August 17, 2004. The pretrial detention is a result of him picking up a new arrest for possession with intent to distribute heroin. In speaking with the defendant, he informed counsel that the heroin he had that day was

intended as a means for him to commit suicide. The mother of his male child and the one he has bonded with had told Mr. Vega that she was leaving him and that he would not be able to see his son anymore. Distraught and feeling helpless, Mr. Vega used his disability money to purchase heroin, a drug he was not a user of, and decided that he would use all of the heroin and "kill myself." Fortunately, this did not come to pass. Jonathan Vega is definitely in need of services for his emotional state. He has not had a visit, other than by counsel, since he was detained. He has not had any money put into his canteen, other than by his counsel since being detained. He has not received a letter or any type of correspondence from anyone than counsel since being detained. Mr. Vega told counsel that he now expects to die in prison. He also feels inadequate because he believes that his life is mirroring that of his father and that he will not be there for his son just as his father was not there for him.

Mr. Vega was not the instigator of the scheme to steal the guns and had no prior knowledge of the firearms until taken to the scene by Todd Hickey. He is one of those poor souls that society seems to have forgotten. Counseling, not incarceration, is the best way to re-integrate Mr. Vega back into American society. Accordingly, it is requested that the Court sentence Mr. Vega to time served and a period of supervised release that includes the emotional and psychological counseling that he needs.

By his attorney,

/s/ James S. Dilday

James S. Dilday
Grayer & Dilday, LLP
27 School Street
Boston, MA 02108

(617) 227-3470
BBO# 124360

## CERTIFICATE OF SERVICE

I hereby certify that on this ___9th___ day of ___February___ 2005 that I have caused true copies of the documents, specified below, to be served to be served on Assistant U.S. Attorney, John Hodgens, Esquire, at the Harold D. Donohue Federal Bldg. & Courthouse, 595 Main Street, Worcester MA. 01608. Service was effected by postage prepaid, first class U.S. mail.

1. Sentencing Memorandum

Executed under the pains and penalties of perjury pursuant to 28 U.S.C. 1746

_____
Attorney James S. Dilday
BBO# 124360
Counsel for, Jonathan Vega, Defendant